Law Offices of
WENDIE L. ELOVICH, P.A.
180 White Road, Suite 204
Little Silver, New Jersey 07739
(732) 842-3224
Attorney for Plaintiffs

---

YESSENNIA RODAS MONTALVO
and JOSE MONTALVO,

         Plaintiffs,

vs.

CITY OF NEWARK, VINCENT
GAGLIANO, SAMUEL DeMAIO,
LILLIAN MEJIAS, ANTHONY F.
AMBROSE, III, IRVING BRADLEY,
JOHN AND JANE DOES 1-10

         Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ESSEX COUNTY
DOCKET NO. L-560-06

Civil Action

COMPLAINT AND JURY DEMAND



JAN 1 9 2006

FINANCE DIVISION
RECEIVED/FILED

---

Plaintiffs, YESSENIA RODAS MONTALVO and JOSE MONTALVO, for their

Complaint against Defendants, allege as follows:

### General Allegations

1.    Plaintiffs are husband and wife, but hereinafter described as "Rodas" and

"Montalvo" for purpose of this Complaint, as they were so known by the Employer and

Employer's agents. Both parties are residents of the State of New Jersey, residing at

865 Broadway, Newark, New Jersey.

2.    Defendant, City of Newark, provides a Police Department (hereinafter

"Employer" or "Police Department"), and is located at 31 Green Street, Newark, New

Jersey.

3.      Under <u>N.J.A.C.</u>, a municipality, like the City of Newark, may create a police force and provide for its maintenance, regulation and control. The Ordinance has provided for a line of authority related to police functions, for the adoption of rules and regulations for the governing of the force, and for the discipline of its members.

4.      The Employer deliberately chooses to ignore its rules and regulations as would impact the Police Director, Anthony Ambrose, the Chief of Police, Irving Bradley, Captain Vincent Gagliano, Captain Samuel DeMaio and Detective Lillian Mejias, offering each of them liberties to harm the Plaintiffs or have Employer's agents so harm Plaintiffs.

5.      Defendants, John and Jane Does 1-10, are Administrators, agents, subsidiaries or other policymaking and enforcement individuals, names presently unknown, who will be revealed through this litigation, but they intentionally caused Plaintiffs harm or would not protect them.

6.      Defendant, City of Newark, through its agents, including John and Jane Does 1-10, knew, or were possessed of knowledge, of the material facts intended to harm these Plaintiffs and did nothing to oversee or monitor their Police Department operations where these Plaintiffs reported, and then failed to discipline those who violated their rules and regulations so as to harm Plaintiffs. The Employer is liable *respondeat superior*.

## FIRST COUNT

### Hostile Work Environment
### Sexual Harassment and Other Harassment

1.      Plaintiffs repeat and reallege the General Allegations, as if set forth at length herein.

2

2.    Originally, Plaintiffs were intentional victims of false statements and vicious rumors started and spread by former Captain Vincent Gagliano, which hurt each of them.

3.    Said Gagliano pretended he caught Plaintiffs having sexual relations within the Communications Building and reported same.  Plaintiffs absolutely denied the allegation since it was untrue.

4.    Plaintiffs suffered a very long and harassing Internal Affairs investigation, which was supposed to clear each of them of any perception of wrongdoing or false charges, if results occurred in their favor.

5.    Although the investigation produced results in Plaintiffs' favor, a severe and retaliatory hostile work environment was established, instead.

6.    The intentional spread of false rumors produced an adverse impact upon their personal lives, marriages and careers.

7.    There was no effort for confidentiality or protection of Plaintiffs pursuant to standard rules and protocol.

8.    While there was absolutely no truth to the horrendous gossip that Plaintiffs had sex on a comstat table, Plaintiff Rodas' marriage completely fell apart due to jealousy and the strain of constant remarks being made by fellow police officers.

9.    In the situation of Plaintiff Montalvo, there was a problem in that Montalvo's spouse, Detective Lillian Mejias, was already sexually involved with the Deputy Chief, Samuel DeMaio.  Montalvo announced their marriage was over and he wanted a divorce, but, now, there was reprisal activity permitted within the scope of officers' duties targeted to each Plaintiff.

3

10.     The Internal Affairs prolonged investigation was irregular and the methods by which it was conducted hurt Yessenia Rodas and Jose Montalvo, separately, as follows.

11.     Rodas was immediately demoted from a Detective status to dispatcher at the Communications Division on the accepted premise she would be found guilty of the charges brought against her. Furthermore, Plaintiff Rodas was compelled to work at her precinct cellblock.

12.     For almost two years, Rodas became a captive audience to male officers alternating between sexually hostile remarks directed to her, and exposing Plaintiff to embarrassing pornography, whether it be the details of their conversations or video/television options available in the cellblock.

13.     As Plaintiff Rodas complained, she was flatly told that: "It should not bother her; she had to live down her reputation as a 'whore' or slut within the police force. Nothing should offend her."

14.     Officers should have been charged with engaging in discriminatory conduct constituting sexual harassment in violation of N.J.A.C. 4A:2-2.3(a). According to the police manuals as being taught:   "Sexual harassment is a form of sex discrimination which violates Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. 2000e-1 to 2000e-17 and the New Jersey LAD, N.J.S.A. 10:5-1 to 10:5-42," but nothing was done for Rodas.

15.     The constant statement directed to Plaintiff was that Hispanic female officers, like her, were strictly meant to serve as the whores of the white officers, and Plaintiff was made the constant "butt" of cruel jokes, as if she made a big mistake by

4

choosing an Hispanic lover amongst them when she could have been protected by white officers, instead.

16.     All this conduct would not have occurred but for Rodas' perceived racial and gender vulnerability.  The conduct was severe and pervasive enough to make a reasonable Hispanic woman believe the condition of her employment had altered.  The working environment was hostile and extremely abusive, including the false statements of Gagliano and other agents of the Employer who kept spreading false statements.

17.     No matter how offended Plaintiff appeared or tried to defend her reputation, she was mocked and ridiculed.  Further, Rodas was shunned and ostracized by former supporters and colleagues on the notion she must be guilty since the Internal Affairs investigation occurred for so long and notions that they must be proving charges against her.

18.     In the end, there was no corrective remedy when the Plaintiffs were cleared of wrongdoing.    The damage was already done, as both an illegal and discriminatory condition of Plaintiff's employment and there was no discipline or charges to anyone but Rodas and Montalvo.

19.     Plaintiff Rodas kept applying for transfer out of the cellblock, but she was ignored until Deputy Director, Rocco Malanga, specifically requested that Rodas begin working for him in the Homeland Security assignment.    While the pornographic materials disappeared from Plaintiff's workplace, a hostile work environment was permitted and condoned by Department personnel.

5

20.     In Plaintiff's new assignment, Rodas was routinely sent on Wednesday evenings to work overtime for the Cert Program and she dutifully complied to her instructions.

21.     The aforesaid Detective Lillian Mejias aggressively seized the opportunity to become abusive to Plaintiff in their short meetings in the hallways and Plaintiff tried to ignore or avoid Mejias.

22.     On March 30, 2005, Detective Mejias caused an assault and battery upon Plaintiff and, when Rodas complained, she was threatened with retaliation by reason that Lillian Mejias was blatantly protected by the Commanding Officers in charge, including Samuel DeMaio, Anthony F. Ambrose, III and other high ranked Officers, who "acted loyal" to Mejias because of her ongoing sexual relationship with Samuel DeMaio, who was promoted to Deputy Chief.

23.     This was not the first offensive conduct by Mejias, and Plaintiff complained about her, but Plaintiff's allegations were always rejected, although these malevolent and malicious acts occurred in the scope of Newark officers' duties and were against Department rules and regulations.

24.     The Plaintiffs' personal relationship actually developed from the discriminatory hostile work environment. From the time the Plaintiffs began to cohabit under the same roof, they were repeatedly harassed by officers from their own precinct acting on behalf of Mejias or DeMaio.

25.     Incidents as minor as delivery of mail to Plaintiffs' home (when Mejias had never resided on the premises) would become harassing events for guidance from their FOP representative.

6

26.     Plaintiffs experienced retaliatory activity for reporting each incident until they realized that it was "foreseeable" harm to take any "protective" action within the precinct.

27.     For instance, Plaintiff Rodas' vehicle was spray painted and she filed a report CC#02106019, but her vehicle was spray painted on two more occasions in direct reprisal.

28.     Also, there were burglary incidents where Plaintiff filed for help and intervention, just like any other private citizen. Nothing was done for her.

29.     Plaintiff Rodas became so frustrated that Sergeant Alvarez of Internal Affairs was complacent and nonchalant that she gave a video statement regarding the lack of discipline to Lillian Mejias and pertaining to other officers.

30.     Rodas put herself on record for the severely hostile work environment and pursued charges of conduct unbecoming public employees N.J.A.C. 4A:2.3(A)6 and for police officers' discriminatory conduct constituting a sexual harassment N.J.A.C. 4A:2-2.3(a)g. No charges were brought or properly investigated on her behalf.

31.     Desperate for a solution, and knowing nothing would be done for Rodas or Jose Montalvo, these Plaintiffs went beyond the "blue code of silence" and disclosed the extramarital personal relationship of Detective Lillian Mejias and the Deputy Chief Samuel DeMaio, who is married. The Plaintiffs were concerned for retaliation, but they knew they had to take action.

32.     Furthermore, Plaintiff Rodas identified for Sergeant Alvarez a sufficient list of police officers who had common knowledge of the sexual (extramarital) affair of

7

Mejias and DeMaio, and its direct impact upon her.   There was no impartial investigation.

33.     Plaintiff Rodas pursued a 1001 Administrative Submission to Deputy Director Rocco M. Malanga, Office of Homeland Security, on April 5, 2005 when nothing was done for her.

34.     It followed that Lillian Mejias remained at her command as did Samuel DeMaio. Moreover, the Plaintiffs' complaints went nowhere.

35.     For years 2002 to 2004, Internal Affairs had not accepted Plaintiffs' written complaints and nothing had been done for corrective action or protective relief to Plaintiffs within their precinct.

36.     There was not even recognition that Plaintiffs should have been protected Employees.   Plaintiffs finally recognized they had to hire their own private counsel because they were being totally ignored.   They faced retaliation for hiring their own counsel and for their complaints.

37.     During the year 2005, Plaintiffs suffered constant retaliation and Internal Affairs did not intervene to protect them nor did other Employer's agents when they asked for intervention or affirmative action relief.   As further proof, Internal Affairs reports directly to Director Anthony Ambrose and that limited the investigation.

38.     Plaintiff Rodas was officially charged with neglect of duty for not reporting an injury stemming back to the incident with Lillian Mejias and a police trial has been held over Plaintiff's head during the entire time that she has been out on sick leave due to complications with her pregnancy.

8

39.     Plaintiff Jose Montalvo was officially charged with "False Statement" and "Being Out of Uniform." The first charge against him was related to the Administrative Report that Montalvo submitted after no one in Internal Affairs would investigate the incidents between Mejias and Rodas. (Montalvo knew something had to be done to protect Rodas from further assault, battery or retaliatory harassment.)

40.     The second charge against Montalvo should not have occurred since Montalvo had a problem with coffee spilling on his uniform and actually obtained official permission to be out of uniform.

41.     For all times mentioned, Internal Affairs agents contributed to Plaintiffs' awkward and diminished status within the Employer's workplace. Their role in investigating Plaintiffs' ongoing complaints has been only a cover-up of their own negligence or the intentional, discriminatory malfeasance of the Employer's agents.

42.     The City of Newark, its Police Department and the Employer's agents, condoned and accepted the sexual or, otherwise, racial hostile work environment and all harassment tactics being imposed on these Plaintiffs.

43.     From the time of March 20, 2005, Plaintiff Rodas was actually barred from entering the fourth floor at 31 Green Street, Newark, in lieu of punishing the actual wrongdoer, Mejias, or the other police officers involved in harassing each Plaintiff in consequence of their separate complaints.

44.     For her earlier complaints, Plaintiff Rodas was singled out to participate in an anger management class. Further, this Plaintiff was threatened with a five (5) day suspension if she did not take the class and agree to these terms.

9

45.     After March 30, 2005, Plaintiff Rodas was fearful that Mejias would severely harm her person. In addition, Rodas felt jeopardized in her job by reason of the retaliatory efforts of higher ranked officers calculated to harm her as continuing threats of punishment, including writing her up for false charges and, now, Rodas awaits a police trial calculated to compromise her career or make her resign.

46.     Plaintiff Montalvo suffered his own severe and pervasive hostile work environment tracing back to Defendant Gagliano's original incident of false reporting of sex between the parties.

47.     For Montalvo, the repercussions and retaliatory activity emerging from the original false charges of former Captain Vincent Gagliano has had tremendous impact upon his career.

48.     Furthermore, Montalvo has been held back from any advancements or normal financial incentives being offered to other police officers.

49.     Jose Montalvo became separated from his wife, Lillian Mejias, based on her known adultery within Montalvo's own precinct, and not only with just one high ranked police officer.

50.     The former Captain Gagliano openly showed he detested Montalvo and, then, dramatized his animus with a false report of finding Montalvo having sexual relations on the comstat table in the Communications Building, knowing there was no truth to the statement.

51.     At that time, the accused parties barely spoke to each other and they were not social. In point of fact, Rodas had more of an acquaintance with Lillian Mejias than Montalvo.

10

52.    After false charges were initiated, Jose Montalvo was transferred from the Communications Division to the Cell Block where he was harassed, mocked and ridiculed.

53.    Montalvo's domestic scene with his wife ended, but there was ongoing reprisal activity linked to her, which the Deputy Chief, Samuel DeMaio, promulgated with high ranked officers' involvement.

54.    In one instance, Plaintiff Montalvo has been disarmed of both personal and duty weapons from his home environment without a plausible reason or explanation, but for an imagined belief that Montalvo might act as a jealous spouse against the Deputy Chief for his adultery with Plaintiff Montalvo's wife, which was without any basis in fact.

55.    For the times Plaintiff Montalvo filed complaints or administrative submissions, his complaints went ignored.  There was no result to end his torment or hostile work environment.

56.    The local Police Department's official position with regard to both Montalvo and Rodas' adverse treatment, caused by the personal/sexual relationship of DeMaio and Mejias, impacting their workplace or home, was that the Newark Employer had no policy for enforcement of any kind and that it was not their business to investigate officers' private lives even if it impacted Plaintiffs.

57.    Furthermore, there was a cover-up by the Employer's agents as if Plaintiffs had no rights nor remedies, even when Plaintiffs raised issues of whether they were victims of conduct unbecoming public employees, or of severe discriminatory conduct in their workplace, or sexual harassment.

58.     Plaintiffs researched and found there were Executive Directives issued by the New Jersey Attorney General, but they could not invoke any attention to any legal subject due to the retaliatory harm they suffered in consequence.

59.     As an adverse result, Montalvo became stuck in a cell block assignment unarmed.   He worked a shift from 11:00 P.M. to 7:00 A.M., with no possibility of advancement or working part-time for higher or greater pay.  His punishment has lasted for almost six (6) years, without abatement.

60.     There has been a pretext that Plaintiff cannot be assigned any weapon, but there is no truth beyond all the Employer's agents' goals to hold Montalvo back in the cell block. The Employer's agents wanted Montalvo to resign.

61.     Claimant's personal weapons, which were duly registered, could have long been returned to him for any perception of past misconduct and, if Plaintiff was subject to ongoing criminal charges he would not have remained a police officer without a permanent record of discipline, suspension or termination.  He was never tried or subject to a trial.

62.     For years, Plaintiff Montalvo has been subject to a house arrest by reason that he works and lives in Newark and, as an unarmed police officer, he is known to be a readily available target in the streets.

63.     Even prisoners that Montalvo deals with, on an everyday basis, can strike out at him and he is vulnerable, without a weapon, anywhere he goes.

64.     The Employer's agents intentionally became involved to prolong an FBI investigation, initiated five years ago, where Plaintiff was singled out for investigation upon a shooting in 2000.

12

65.    In actuality, Plaintiff was fully investigated by the Essex County Grand Jury, the State Police and the Federal Bureau of Investigation, and no criminal charges were filed against Montalvo nor was he subjected to a criminal or civil trial.

66.    Director Anthony Ambrose III was informed the Newark Federal Bureau of Investigation, with the concurrence of the U.S. Attorney General's Office, closed down any investigation involving Jose Montalvo.

67.    But for the interference of the Employer's agents, the investigation would have been routine.  Further, Plaintiff's weapons would have been returned to him in timely manner, not some six years later on December 20, 2005.

68.    As reprisal for his complaints, Montalvo has been subject to charges planned to affect his discipline record and end his career.  There have been limited (cover-up) investigations for any allegation Montalvo files himself.  There is always repercussion and he has faced suspensions, although the Prosecutor's witnesses did not ever show up at police trials to testify against him.

69.    For the incident of the 2000 shooting, Plaintiff was cleared of wrongdoing by three government agencies, however, five years later Montalvo was brought up on the original charges and then faced 20 days of suspension.  When Plaintiff's counsel argued that the retaliatory charges made no sense by: (i) reason of being dismissed in the past; (ii) no witnesses appeared for the prosecution; or (iii) Plaintiff would have been jailed or been awaiting a criminal trial, the Employer insisted they could punish Plaintiff.

70.    In the end, Plaintiff obtained 20 days of suspension as retaliation for pressing forward his own complaints and a notice of claim, as if to permanently silence him.

13

71.     All the Plaintiffs' civil rights and remedies have been violated within the workplace for official duties and work routines, but, also, the Employer's agents have invaded the Plaintiffs' personal home environment to violate their rights.

72.     The Plaintiffs have married and they have tried to start a family.  Rodas was caused to go out on extended sick leave for high risk pregnancy complications, which emerged from the torment and emotional distress within the workplace.    Also, each party was burdened with the upset of the other party.

73.     Further, Plaintiff Rodas has been constantly harassed at home, although she is within her rights to be at home on extended sick leave.  The Employer's agents know, or should know, they cannot harass an employee on sick leave out after a certain number of days on physician's notation.

74.     Plaintiff became so emotionally distraught by reason of the foregoing that she went into labor and her twins had to remain in the hospital for almost a month by reason of their compromised status and Rodas was devastated, along with Montalvo. She had already miscarried what would have been her triplet, earlier, as a result of the assault by Lillian Mejias.

75.     Each act of harassment was done, either with malice and a wanton disregard of the victim's personal rights and sensitivities, or with a foreseeability of intended harmful consequences.

76.     Moreover, Defendant's agents were successful in their efforts to ruin each of these Plaintiffs, personally, and in their careers.

77.     As further proof, Montalvo was suspended for one month, without pay, and, then, informed he was placed on a transfer list to go to the South District, although

14

he has not worked the streets for almost six (6) years. No efforts have been made to retrain him for the rough streets of the South District.

78. The Employer's agents have run out of excuses to keep Montalvo within their cell block and they seek final reprisal. Both Plaintiffs still face police trials on trumped up charges.

79. Montalvo has been warned that he may be subject to an illegal set-up of "planted" drugs in his vehicle, or other illegal activity since the Employer wants to terminate him, but for now he still remains at the cell block.

80. The Defendant Employer, through its agents, remains responsible:

(a) For all acts and conduct of the individually named agents within the scope of their authority;

(b) For failing to control their agents' conduct;

(c) For permitting such agents to wear any police uniform or cloak of authority and offering each one power to carry out retaliatory or discriminatory actions, whether from Internal Affairs or at his Precinct, or trying to influence the Newark FBI or Department of Justice.

(d) For promoting discriminatory or adverse employment conditions for their own illegal objectives and to the detriment of the Plaintiffs.

(e) For trying to establish termination of the Plaintiffs and false discipline records upon which they shall be punished through time and then left without any jobs.

81. For all these incidents for each Plaintiff, they presented as vulnerable minorities, Hispanic, within the City of Newark, where there is a discriminatory animus and hostile work environment for any challenges to Caucasian/Italian police officers'

15

authority and subordinates are so fearful for reprisal action that they will aid the commissions of crime or torts against Plaintiffs just to remain employed and not targeted themselves.

82.    The Defendants, through their agents, have deliberately contravened the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to 10:5-42 and violated Plaintiffs' rights.

83.    As a proximate result of the foregoing, Plaintiffs have suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, and promotions, along with qualify of life benefit.

84.    By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiffs demand judgment for:

a.    Damages, compensatory and punitive and interest accruing;

b.    attorney's fees;

c.    costs of suit;

d.    for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.    for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

16

f.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.      for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h.      AND for such other relief as the Court may deem equitable and just.

## SECOND COUNT
## Breach of Contract/Violation of Civil Rights

1.      Plaintiffs repeat and reallege the General Allegations and the First Count of the Complaint, as if fully set forth at length herein.

2.      For all times mentioned, Plaintiffs Yessenia Rodas and Jose Montalvo appeared in the Employer's workplace, as protected Hispanic employees, and their rights have been virtually eliminated, time after time, for a period of almost six years, although Plaintiffs are purportedly protected by firm Collective Bargaining Agreements.

3.      Further, the Newark Police Department pretends to put out Director's Memorandum from Anthony F. Ambrose, III, and to enforce the New Jersey Constitution, U.S. Constitution and other legislative mandates, whether it be pursuant to N.J.S.A. 10:5-1 to 10:5-42, N.J.A.C. 40A:14-118, or Title VII but the Plaintiffs' facts of severe and extreme adverse discriminatory actions show their policies mean nothing.

17

4.     Defendants (each and everyone) dare to breach every Agreement, procedure or regulation in place to protect these Plaintiffs and then proceeded to cover-up their wrongdoing.

5.     In all incidents impacting Plaintiffs in their workplace or at home, Defendants, including their Administrators, John or Jane Does 1-10 (or their agents) have failed to maintain the protocol, rules and regulations for the governing of their police force, Internal Affairs, Affirmative Action or other agencies and, more importantly, for the discipline of its members adversely treating the Plaintiffs herein.

6.     As aforedescribed, there has been mixed motives as to why employees like Defendants' or their agents' mistreating Plaintiffs have not been disciplined for conduct unbecoming a public employee, or, for discriminatory conduct constituting harassment, sexual harassment or a discriminatory or retaliatory hostile work environment.  They present false charges or ongoing threats of charges and then when Plaintiff does not acquiesce, Montalvo ends up with longer periods of suspension, without pay, although his wife is out on sick leave and he has a family to support.

7.     At all times relevant to the within Complaint, the extramarital or sexual/personal relationship of a Detective, Lillian Mejias, with the Deputy Chief, Samuel DeMaio, so highly placed in the Chain of Command, has adversely impacted Plaintiffs with foreseeable and known consequences of harm.  This affair is common knowledge within the workplace, although "Officers" are pushed to a cover-up situation under threats of higher ranked Officers causing more harm.

8.     The discriminatory animus and discriminatory actions of former Captain Vincent Gagliano, and other higher ranking police officers, has been rewarded.  For

instance, Defendant Gagliano was promoted all the way up to Newark Deputy Police Chief, although he deliberately started Plaintiffs' problems and exacerbated their mistreatment.

9.      Recent public investigations have revealed that Gagliano was hired, as a felon, and that he should not have even been carrying a gun based on his criminal history.

10.     Furthermore, the discriminatory animus within the City of Newark's Police Department filters into the workplace and the Plaintiffs have been victimized.

11.     Defendants or their agents deliberately aid the commission of a tort.

12.     For times Plaintiffs turned to their precinct or for the Employer's agencies' protection, or filed complaints or administrative submissions and sought intervention to end their discriminatory treatment or hostile work environment, they have faced reprisal action, or those in sympathy with Plaintiffs, face reprisal activity for supporting the Plaintiffs.

13.     There is a conspiracy to commit torts and cover up the intentional and malicious harm inflicted on Plaintiffs or those who sympathize with them.

14.     The complained of conduct of all Defendants and their agents would not have occurred but for Plaintiffs perceived vulnerability as Hispanic employees and, also, for Rodas being an Hispanic female.

15.     For all times stated, the conduct was severe and pervasive enough, including retaliatory action, to make reasonable (Hispanic) individuals believe the condition of their employment has been altered and they no longer had any constitutional rights or liberties or protection of the City, State or any government.

19

16.    Police Officers identified by Plaintiffs have been higher ranked officers, and they appear to be beyond investigation or any discipline.  In all events, they are negligently retained in their high positions, despite wrongdoing to Plaintiffs.

17.    Both Plaintiffs' rights are ignored because they are not Caucasian nor Italian, the preferred profiles within Newark.

18.    Certainly, Plaintiffs have rights protected within their police functions and they should not be intimidated in their workplace nor at home.

19.    Defendants, including the Police Director, Anthony Ambrose III, and the Chief of Police, Irving Bradley, or their agents, know there is an increase in the number of harassment and sexual harassment complaints received at the Office of Affirmative Action from Departmental personnel and their recent response has been to covertly encourage a failure of investigation.

20.    The Employer's highest agents have officially recognized, when this form of employee misconduct is permitted, and condoned, by Department personnel, it becomes illegal and a discriminatory condition of employment, but, in total effect, the Employer condones and tolerates various forms of harassment, including sexual/gender and ethnic discriminatory criteria.

21.    The pretense posture that any form of retaliation directed towards employees will be dealt with severely is utterly false, although, from the time of 1990 to current date, supervisory personnel have become responsible for enforcement under standing Orders, and established standard operating procedures at Newark, for reporting, investigation and resolution of all complaints, like that of the Plaintiffs.

22.     Plaintiffs have not had proper investigations or resolutions of their respective complaints or submissions

23.     Instead, Plaintiffs have been punished over and over again for their complaints and submissions.  They have experienced retaliatory harassment/sexual harassment and then been racially profiled as an illegal and discriminatory condition of their employment, without abatement.

24.     For almost six years, these Plaintiffs have been adversely treated and such extreme and severe conduct impacted their individual morale, motivation and job performance, although they were compliant to all their duties.

25.     Plaintiffs have not repeated all the incidents at the First Count of this Complaint, but their latest charges are for Rodas' neglect of duty, retroactive to incidents involving Lillian Mejias, which were reported and ignored, and Plaintiff Rodas shall be subject to a trial based on trumped up charges against her.

26.     As aforesaid, Montalvo was charged twice for issuing a "false statement" and, then, "being out of uniform."  For the last charge, he was granted permission to be out of uniform for a known mishap in the workplace.

27.     Additionally, Montalvo was prosecuted five years after a shooting incident where he was cleared by three different agencies, including the Newark Police Department, and now he is to be transferred out of the District.

28.     Both Plaintiffs fear worse consequences (termination) notwithstanding the pretense of Director's Memorandum or New Jersey L.A.D. violations, including the U.S. Civil Rights Act announcements or other general orders issuing from the Mayor's Executive Office, Division of Personnel or Department of Administration Operating

Procedures as they keep getting charged and punished by the Employer's agents just to silence them.

29.    The foregoing directives and policies mean absolutely nothing and are not enforced in Plaintiffs' workplace nor are the State Attorney General's Executive policies enforced within the local workplace.

30.    Defendants, including John and Jane Does 1-10, do not properly train, supervise or monitor the Newark Police Department operations to prevent the foreseeable harm to these Plaintiffs or otherwise act to protect them.

31.    Additionally, there is the City of Newark Municipal Council's failure to oversee the Newark Police Department in accord with N.J.S.A. 14-118.

32.    Plaintiffs have been rejected at Affirmative Action offices and Internal Affairs, where Officers or other agents have alternated for years in causing Plaintiffs greater problems, with lack of confidentiality and prolonged investigations.  As an outcome, plaintiffs faced more false charges being imposed against them, and for times they tried to initiate their own investigations, they were routinely ignored as if they have absolutely no rights nor remedies.

33.    There has not been any good faith efforts to comply with the Collective Bargaining Agreement or regarding the protection of civil rights or to prevent discrimination in Plaintiffs' workplace.

34.    The situation of Jose Montalvo becoming targeted for lasting and permanent investigation over trumped up charges sent to the Newark FBI, has literally ruined Montalvo in his police career, and, although Montalvo was cleared of any wrongdoing or charges, he remained unarmed and permanently assigned to the Newark

22

Cell Block and now he may be subject to a transfer without training to work the streets again.

35.     For years, Plaintiff Montalvo was not able to earn any overtime pay, or advance without his weapon, and he has been deprived of income as a permanent penalty, losing high dollars each year of his employment at Newark's Cell Block, only.

36.     Likewise, Plaintiff Rodas suffered extreme retaliatory action for her complaints and, due to her severe emotional upset, she lost a baby as a result of the stress within her workplace. The assault by Lillian Mejias was not fairly investigated.

37.     Rodas was harassed at home to obtain her resignation, although she has been on extended sick leave and now she faces a police trial on her return to work for trumped up charges.

38.     It appears the aberrant result sought by Defendants, or their agents, at Plaintiffs' police trials is to get each of them to resign from the workplace such that remedial or corrective action will never occur and Defendants can permanently bury Plaintiffs' facts of outrageous and discriminatory mistreatment.

39.     As a proximate result of the foregoing, Plaintiffs have suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with qualify of life benefits.

40.     By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish policy, protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiffs demand judgment for:

a.     Damages, compensatory and punitive and interest accruing;

23

b.    attorney's fees;

c.    costs of suit;

d.    for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.    for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f.    for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.    for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h.    AND for such other relief as the Court may deem equitable and just.

## THIRD COUNT
## Conspiracy to Commit Crimes, Torts or
## Aid the Commissions of Crimes or Torts

1.    Plaintiffs repeat and reallege the General Allegations and the First and Second Counts of the Complaint, as if fully set forth at length herein.

24

2.     For the relevant times, Plaintiffs were assigned to their Police Precinct, in their separate roles and functions, and they did not provoke misconduct, violation of Command or Supervisor's responsibilities or Internal Affairs or Affirmative Action responsibilities at any point.

3.     The Employer has not provided nor maintained a healthy professional work environment, free from false accusations, sexual or other harassment, retaliatory misconduct, intimidation of Plaintiffs in their work performance and, also, at their homes.

4.     In point of fact, Plaintiffs have been compelled to submit as victims to discriminatory animus used as a basis for terms and conditions of their employment and, also, as a basis for ongoing adverse or retaliatory employment decisions against them.

5.     For years, as aforedescribed, Plaintiffs have been targeted with false accusations and they have tried to complain, without any remedy.

6.     For certain incidents as aforedescribed, each Plaintiff has been bullied or intimidated and there has been assault, battery or other criminal behavior or offenses, which the Employer's agents ignored, covered up or retaliated with charges or threats of charges against Plaintiffs, instead of punishing the wrongdoers.

7.     For the times Plaintiffs should have been subject to confidentiality or investigation of complaints, their privacy and reputation has been exploited by the Employer's agents to the fullest extent possible to ruin them as credible victims.

8.     Certainly, the Employer's agents were advised, or should have been trained, to know the proper parameters of a fair investigative process, including retaliation, protection of the parties, confidentiality, privacy and to preserve the

reputation of the Plaintiffs/victims and to take remedial action to correct wrongdoing imposed against Plaintiffs, but no agent acted in such manner, ever.

9.     There was never any recognition of the Plaintiffs' rights of any kind, nor to discipline the wrongdoers with suspension, with or without pay, termination, referral to the criminal justice system for prosecution, despite the outrageous and egregious actions, inactions, omissions and discriminatory malfeasance of Defendants and their agents, as aforedescribed.

10.     Defendants (any or all of them), including John and Jane Does 1-10, neglected their own duties and covered up wrongdoing, but there were promotions or rewards which followed for aiding the commission of these torts or a conspiracy occurred for criminal offenses, as aforedescribed, up and down the Chain of Command and through other agencies of the Employer.

11.     There was not proper legal authority, legal justification or probable cause for Defendants' intentional conspiracy activities, to separately taunt, torment and severely harass these Plaintiffs or cause a severe and extreme hostile work environment.

12.     The afore-named Defendants, and their agents, aided, abetted, assisted, and knowingly committed to unlawfully harm the Plaintiffs. Furthermore, the Defendants have tried to establish false evidence against the Plaintiffs knowing, or, should be knowing they were innocent parties.

13.     For all times mentioned, each Plaintiff suffered harassment and ridicule. They were threatened with termination or that their police officers career would be

26

effectively ruined by the Defendant Officers or their agents of the Internal Affairs Division, and elsewhere.

14.    Recent public investigations have revealed that the now Newark Deputy Police Chief, Vincent Gagliano, was hired, as a felon, and that he should not have even been carrying a gun based on his criminal history. It was Gagliano who initiated the problems against Plaintiffs.

15.    The combination of Defendants in a conspiracy was purposeful and common design to perpetrate a tort for an unlawful purpose, or a purpose achieved by unlawful means and for other severe abuse activities. Plaintiffs were deliberately targeted as vulnerable Hispanic Police Officers.

16.    Each and every member of this conspiracy to commit a tort or aid the commission of the tort is equally and vicariously liable to the Plaintiffs for causing them damages, and, special damages.

17.    Defendants (each and everyone) proximately caused adverse results by their tortious overt or covert acts in furtherance of the conspiracy; and the Defendant Employer is, and, remains, liable to Plaintiffs, *respondent superior*.

18.    Defendant, City of Newark, through its agents, including John Does 1-10, was possessed of full knowledge of the material facts seriously contemplated to harm these Plaintiffs and did nothing to oversee their Police Department operations or that of the specialized units.

19.    In the final analysis, Plaintiffs were planned to suffer as victims like any common criminal although they were uniformed officers with good performance records for years and dedicated employees.

27

20.     As a proximate result of the foregoing, Plaintiffs have suffered damages, a severe extreme emotional distress, loss of wages, fringe benefits, promotions, along with qualify of life benefits.

21.     By reason that Defendants' agents' actions were intentionally malicious, retaliatory and sanctioned in contradiction to establish protocol and procedures, Plaintiffs seek all damages, including compensatory and punitive.

WHEREFORE, Plaintiffs demand judgment for:

a.     Damages, compensatory and punitive and interest accruing;

b.     attorney's fees;

c.     costs of suit;

d.     for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.     for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f.     for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.     for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police

Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

    h.    AND for such other relief as the Court may deem equitable and just.

## FOURTH COUNT
### Negligent Failure To Properly Train And Supervise
### Or To Oversee Police Department Activities

1.    Plaintiffs, Yessenia Rodas and Jose Montalvo, repeat and reallege the General Allegations and the First, Second and Third Counts of the Complaint, as if fully set forth at length herein.

2.    The Defendants, City of Newark and/or John Does 1-10 knew, or, should have known, and monitored how the Defendant Officers proceeded for Plaintiffs in regard to their issues and complaints. Under all circumstances, there should have been proper procedures and protocol in place to protect City of Newark police officers like the Plaintiffs Rodas and Montalvo.

3.    As aforedescribed, Plaintiffs suffered by the City of Newark's (or John and Jane Does 1-10) failure to oversee and monitor the Police Department in accord with N.J.S.A. 40A:14-188 or other statutory authority and contracts with the Union.

4.    All Defendants' agents (up and down the Chain of Command) should have been trained for assignment, and, further, for roles in the Internal Affairs Unit or Affirmative Action Unit, but there has been blatant negligent or intentional departure from proper training and any supervisory controls or command by reason of wrongdoing at the top, since DeMaio is sexually or personally involved with Lillian Mejias and

29

everyone protects him.   This seriously impacted Plaintiffs rights as citizens or as uniformed police officers protected by statutory and constitutional dictates.

5.      Recent public investigations have revealed that the now Newark Deputy Police Chief, Vincent Gagliano, was hired, as a felon, and that he should not have even been carrying a gun based on his criminal history.   It was Gagliano who initiated the problems against Plaintiffs.

6.      For all relevant times, there was a failure to properly train and supervise or conspired intentional or malicious harm calculated to seriously and negatively impact the Plaintiffs standing amongst their fellow officers, peers or supervisors, now, and for the future.

7.      Defendant, City of Newark, through its agents, or John and Jane Does 1-10, were possessed of knowledge of the material facts seriously contemplated to harm these Plaintiffs and did nothing to oversee their Police Department operations or that of the specialized units.

8.      In the final analysis, Plaintiffs were planned to suffer as victims like any common criminal although they were uniformed officers with good performance records for years and dedicated employees.

9.      Plaintiffs suffered the original humiliating and harassing activities, and, then, there was reprisal with deliberate, malicious or wanton disregard of their personal rights and sensitivities as their reputations became ruined with false Departmental charges being made part of their permanent records. This has become common place at the City of Newark, a pattern and practice of abusive activity.

30

10. Plaintiffs seek damages and punitive damages based on the foregoing malice, wanton disregard of their rights as victims and based upon the foreseeability of the harmful consequences.

11. The Plaintiffs confronted false charges and ended with permanent discipline records contrary to the named Defendant Officers who actually pursued a conspiracy of wrongdoing.

12. John Does 1-10 or other such Defendants' agents deliberately turned a deaf ear to any proper investigation of wrongdoing and made heroes of the named Defendant Officers causing intentional or emotional distress to the Plaintiffs.

13. Strong messages have been sent out to the workforce that officers like the Plaintiffs have absolutely no rights to question their superiors' actions, malfeasance or a conspiracy of any kind. The Defendants' agents can willfully and wantonly abuse anyone they want to target without fear of discipline even if they impose discriminatory action.

14. As a proximate result of the foregoing, all Defendants including the City of Newark, and, John and Jane Does 1-10 remain liable to Plaintiffs, *respondeat superior*, and Plaintiffs seek damages for severe and extreme emotional distress, loss of wages, fringe benefits, promotions, along with qualify of life benefits.

WHEREFORE, Plaintiffs demand judgment for:

a. Damages, compensatory and punitive and interest accruing;

b. attorney's fees;

c. costs of suit;

31

d.      for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.      for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.      for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h.      AND for such other relief as the Court may deem equitable and just.

## FIFTH COUNT
## Defamatory Injury To Reputation

1.      Plaintiffs, Yessenia Rodas and Jose Montalvo, repeat and reallege the General Allegations and the First, Second, Third and Fourth Counts of the Complaint, as if fully set forth at length herein.

32

2.      Defendants through their agents have made false, defamatory statements of fact concerning the Plaintiffs and even their private sensitivities have been published to the community at large.

3.      In all instances, starting from the first Internal Affairs investigation, the outcome was predictable to cover-up any search for truth.

4.      Defendants have aided each other in their disloyalty to Plaintiffs, who were known to have clean reputations unmarred by serious discipline history. Defendants have intentionally misstated the facts and acted in reckless disregard of its truth or falsity.

5.      All statements regarding the Plaintiffs were not possibly made for a common interest or communicated under any reasonable belief that the Plaintiffs would not be harmed.

6.      Defendants' agents deliberately breached any policy of good faith and fair dealing such that the Plaintiffs fear that they are, and, shall remain, compromised forever in their job functions on a daily basis as they pursue their official duties or interact with the community at large.

7.      Plaintiff Rodas' physicians have her out on sick leave due to severe emotional upset while she was pregnant and thereafter for maternity leave.

8.      Plaintiff, Jose Montalvo, persists in a situation of tormenting defamatory remarks, slanderous *per se* without correction or remedy. He does not have a future crystal ball, but all the events of five years remain vivid and fresh in Police Officers' minds and taunts him in conversations, as if it occurred only yesterday, and the situation persists for Rodas, as well.

33

9. As a proximate result of the foregoing, Plaintiffs seek all damages, including special damages which can be proven for time of trial

WHEREFORE, Plaintiffs demand judgment for:

a. Damages, compensatory and punitive and interest accruing;

b. attorney's fees;

c. costs of suit;

d. for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e. for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f. for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g. for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h. AND for such other relief as the Court may deem equitable and just.

34

impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f.  for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.  for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h.  AND for such other relief as the Court may deem equitable and just.

## SEVENTH COUNT
### Spouse Burdened By Injury To Other Spouse – Loss Of Consortium
### (Per Quod Claim)

1.  Plaintiffs, Jose Montalvo and Yessenia Rodas, repeats and realleges the General Allegations and the First, Second, Third, Fourth, Fifth and Sixth Counts of the Complaint, as if fully set forth at length herein.

2.  Yessenia Rodas and Jose Montalvo became married and started a family together.

3.  Each Plaintiff has become injured and burdened as a proximate result of the mistreatment of the other. Both parties have alternated becoming emotionally despondent and inattentive to the other.

36

## SIXTH COUNT
### Intentional or Negligent Infliction of Emotional Distress

1.  Plaintiffs repeat and reallege the General Allegations and the First, Second, Third, Fourth and Fifth Counts of the Complaint, as if fully set forth at length herein.

2.  The conduct of the Defendants, City of Newark (Newark Police Department), Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose Irving Bradley, and others, John and Jane Does 1-10, has been outrageous and extreme.

3.  The aforementioned intentional or negligent conduct of the Defendants, City of Newark (Newark Police Department), Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose Irving Bradley, and others, John and Jane Does 1-10, caused Plaintiffs to suffer severe extreme emotional distress.

4.  The said conduct of the Defendants, City of Newark (Newark Police Department), Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose Irving Bradley, and others, John and Jane Does 1-10, was calculated to cause and, in fact, did cause Plaintiffs to suffer permanent severe emotional distress.

WHEREFORE, Plaintiffs demand judgment for:

a.  Damages, compensatory and punitive and interest accruing;

b.  attorney's fees;

c.  costs of suit;

d.  for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.  for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or

35

4.    Plaintiff Rodas has miscarried one of her triplets because of the extreme and severe hostile work environment imposed. She is still harassed at home by Defendants' agents filing false charges and contacting her numerous times each day for no apparent reason but to frighten and intimidate her.

5.    Meanwhile, Plaintiff Montalvo cannot prevent this harassment scheme in his own home, just like past incidents calculated to make them upset and resign. They have been burdened by false charges and police trials for a very long time.

6.    Defendants should be held liable for all the reasonable expenses incurred for the care, treatment and cure of the Plaintiffs, and for any loss or impairment of his or her spouse's services, society or sex due to the harm or injuries, including loss of life and the grief that resulted therefrom.

WHEREFORE, Plaintiffs demand judgment for:

a.    Damages, compensatory and punitive and interest accruing;

b.    attorney's fees;

c.    costs of suit;

d.    for a Declaratory Judgment stating that the City of Newark must take action immediately to remove the named Defendants from their official duties;

e.    for a Declaratory Judgment stating that City of Newark must protect these Plaintiffs against any further reprisal activity, adverse treatment, disparate treatment or impact and otherwise protect against a discriminatory bias program being implemented against Yessenia Rodas and Jose Montalvo, contrary to the New Jersey LAD or other statutory provisions;

f.      for a Declaratory Judgment for the City of Newark to take specific corrective action against those who have deliberately utilized their authority to harm Plaintiff in the workplace, including Vincent Gagliano, Samuel DeMaio, Lillian Mejias, Anthony Ambrose, Irving Bradley and John and Jane Does 1-10;

g.      for a Declaratory Judgment for the State of New Jersey to intervene and assume control over all operations of the Internal Affairs Division and their Police Precincts so as to effectuate serious non-discriminatory, non-retaliatory changes and to protect Plaintiffs Yessenia Rodas and Jose Montalvo from present governing authorities, including John and Jane Does 1-10;

h.      AND for such other relief as the Court may deem equitable and just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all causes of action.

Dated:   January 11, 2006

Law Offices of
WENDIE L. ELOVICH, P.A.
Attorney for Plaintiffs

By:_____
WENDIE L. ELOVICH, ESQ.

## DESIGNATION OF COUNSEL

Pursuant to Rule 4:25-4, WENDIE L. ELOVICH, ESQ. is hereby designated as

Trial Counsel for the Plaintiffs in the within matter.

Dated:    January 11, 2006           Law Offices of
                                     WENDIE L. ELOVICH, P.A.
                                     Attorney for Plaintiffs

                                     By: _____
                                         WENDIE L. ELOVICH, ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1 the undersigned certifies that this matter in controversy is

not the subject of any other action pending in any Court of Arbitration forum, nor is any

other action or Arbitration proceeding presently contemplated and all known parties

have been joined in this action.

Dated:    January 11, 2006           Law Offices of
                                     WENDIE L. ELOVICH, P.A.
                                     Attorney for Plaintiffs

                                     By: _____
                                         WENDIE L. ELOVICH, ESQ.

STATE OF NEW JERSEY :
                    SS:
COUNTY OF MONMOUTH:

I, JOSE MONTALVO, being duly sworn, depose and say:

I am the Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters herein stated to be alleged on information and belief, and as to those matter, I believe it to be true.

Dated:  January 11, 2006

_____
JOSE MONTALVO

40

STATE OF NEW JERSEY :
                                SS:
COUNTY OF MONMOUTH:

I, YESSENIA RODAS, being duly sworn, depose and say:

I am the Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters herein stated to be alleged on information and belief, and as to those matter, I believe it to be true.

Dated:  January 11, 2006

_____
YESSENIA RODAS MONTALVO

41